# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOMAS M. GIACOBBE, | ) |
| Plaintiff, | ) |
| v. | ) 05 C 4763 |
| SPEISER, KRAUSE, NOLAN & GRANITO, a professional corporation, | ) Judge Ronald A. Guzmán |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

In this diversity case, attorney Thomas M. Giacobbe has sued the law firm of Speiser, Krause, Nolan, & Granito ("Speiser") for breach of contract. Before the Court are Speiser's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) and motion to transfer the cause of action to the Eastern District of New York pursuant to 28 U.S.C. § 1404. For the reasons provided in this Memorandum Opinion and Order, the Court grants Speiser's motion to dismiss for lack of personal jurisdiction and denies the motion to transfer as moot.

## FACTS

Giacobbe is an attorney and an Illinois resident. (Compl. ¶ 1.) Speiser, a law firm, is a professional corporation incorporated in Texas with its principal place of business in New York. (*Id.*)

On September 24, 1989, Gheorghina Vulcu, an Ohio resident and administratrix of the estate[1] of her son, Peter Vulcu, retained Giacobbe to litigate any claims arising out of her son's death, which occurred in the Pan Am Flight 103 tragedy over Lockerbie, Scotland. (*Id.* ¶ 2.) On October 13, 1989, Giacobbe contacted Speiser about taking over the litigation of Vulcu's claims. (*Id.*) Speiser was one of a select number of firms handling the Pan Am litigation in New York. (Pl.'s Mem. Opp'n Def.'s Mot Dismiss ("Pl.'s Resp."), Giacobbe Aff. ¶ 1.) On November 20, 1989, Giacobbe signed an attorney representation contract ("the contract") relating to Vulcu's claims. (Compl. ¶ 3.) The contract provided that Giacobbe and Speiser would act as co-counsel with regard to any claims arising from the Lockerbie incident. (*Id.*) Speiser agreed to share with Giacobbe fifty percent of any attorney's fees earned from the litigation of Vulcu's claims. (*Id.*)

On March 17, 1997, Speiser mailed a check to Giacobbe in Illinois in the amount of $146, 178.03, which represented half of the attorney's fees from Vulcu's settlement with Pan Am. (*Id.*) However, Giacobbe received no compensation from the November 17, 2003 settlement of Vulcu's claims against the Libyan government. (*Id.* ¶ 4.) The only other contacts that Speiser initiated with Giacobbe consisted of a few letters and telephone conversations updating Giacobbe on the status of the case. (Pl.'s Resp., Giacobbe Aff. ¶¶ 2-4.)

## DISCUSSION

The plaintiff bears the burden of proving the existence of personal jurisdiction by a preponderance of the evidence. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th

---

[1] An Ohio court appointed Gheorghina Vulcu as the administratrix of her son's estate. Neither she nor her deceased son, nor any distributees of decedent's estate are or ever were residents or citizens of the Illinois.

Cir. 1997). In a diversity suit, jurisdiction is only proper if an Illinois court would have jurisdiction. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992).

Two inquiries are necessary to determine whether an Illinois court may exercise personal jurisdiction over a nonresident defendant: (1) whether Illinois' long-arm statute permits *in personam* jurisdiction and (2) whether the assertion of jurisdiction under the long-arm statute would be inconsistent with due process. *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1216 (7th Cir. 1990). Under Illinois' long-arm statute, Illinois courts may exercise jurisdiction on "any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILL. COMP. STAT. 5/2-209(c). "[T]here is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002).

When a motion to dismiss is to be decided solely on written materials, the plaintiff need only make a *prima facie* case for personal jurisdiction. *Neiman v. Rudolf Wolff & Co., Ltd.*, 619 F.2d 1189, 1190 (7th Cir. 1980). In doing so, "all well-pleaded jurisdictional allegations in the complaint are accepted as true unless controverted by affidavit." *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1021 (N.D. Ill. 2004). "Any conflicts in the pleadings and affidavits are to be resolved in the plaintiff's favor, but the court accepts as true any facts contained in the defendants' affidavits that remain unrefuted by the plaintiffs." *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 905 (N.D. Ill. 2003); *see also RAR, Inc.*, 107 F.3d at 1275.

## I. General Jurisdiction

"[G]eneral jurisdiction allows a defendant to be sued in the forum regardless of the subject matter of the litigation." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003). It is permitted "only where the defendant has continuous and systematic general business contacts with the forum." *Id.* (quotations omitted). "Those contacts must be so extensive as to make it 'fundamentally fair to require [defendant] to answer in any [Illinois] court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world.'" *Travelers Cas.*, 304 F. Supp. 2d at 1025 (quoting *Purdue Research*, 338 F.3d at 787). Several factors are considered in making this analysis:

> (1) whether and to what extent the defendant conducts business in the forum state; (2) whether the defendant maintains an office or employees within the forum state; (3) whether the defendant sends agents into the forum state to conduct business; (4) whether the defendant advertises or solicits business in the forum state; and (5) whether the defendant has designated an agent for service of process in the forum state.

*Interlease Aviation Investors*, 262 F. Supp. 2d at 906-07. General jurisdiction is a demanding standard that is "considerably more stringent than that required for specific jurisdiction." *Purdue Research*, 338 F.3d at 787; *see Griffith v. Wood Bros.*, No. 04 C 3118, 2004 WL 2418296, at *8 (N.D. Ill. Oct. 27, 2004).

Speiser's contacts with Illinois do not satisfy the stringent standard for general jurisdiction. All of Speiser's contacts with Illinois arise out of a single contract with Giacobbe and consist of the agreement, one payment to Giacobbe, and infrequent correspondence. Speiser neither is incorporated in Illinois nor conducts regular business within the state. In addition, the record does not reflect that Speiser or any of its agents have ever been physically present in

4

Illinois. Such a tenuous connection with a forum state is simply insufficient to constitute continuous and systematic general business contacts.

## II. Specific Jurisdiction

"Specific jurisdiction refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *RAR, Inc.*, 107 F.3d at 1277 (quotation omitted). To be subjected to the jurisdiction of a foreign forum, a defendant need only have sufficient "minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted). "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotation omitted). Courts look to the defendant's "conduct and connection with the forum State" to determine if he should "reasonably anticipate being haled into court there." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "[A]n out-of-state party's contract with an in-state party is alone not enough to establish the requisite minimum contacts." *RAR, Inc.*, 107 F.3d at 1277. "'[P]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' must indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *Id.* (quoting *Burger King*, 471 U.S. at 479).

Based on the single contract that Speiser entered into with Giacobbe, it was not reasonably foreseeable to Speiser that it would be subject to suit in Illinois. Further, the prior negotiations and course of dealing between the parties do not support a finding that Speiser has

5

sufficient minimum contacts with Illinois. First, the record clearly reflects that it was Giacobbe, not Speiser, who initiated the negotiations that led to the contractual relationship. Second, Speiser negotiated the contract from its office in New York City. Other courts in this district have held that similar negotiations and courses of dealings did not result in sufficient minimum contacts with Illinois. *See Heller Fin., Inc. v. Ohio Sav. Bank*, 158 F. Supp. 2d 825, 829 (N.D. Ill. 2001) (holding that a defendant's telephone calls and faxes did not constitute minimum contacts with Illinois); *Ameritech Servs., Inc. v. SCA Promotions, Inc.*, No. 99 C 4160, 2000 WL 283098, at *2 (N.D. Ill. Mar. 6, 2000) (holding that out-of-state defendant's correspondence with in-state plaintiff followed plaintiff's initial inquiry and was inadequate to establish minimum contacts with Illinois). Third, the contract at issue was formed in New York rather than Illinois. Rather than sending a representative to Illinois, Speiser's agent signed the contract after Giacobbe had signed it and mailed it to Speiser's office in New York. Fourth, Speiser performed its obligations under the contract in New York. The underlying litigation between Gheorghina Vulcu as administratrix of the estate of her son, Peter Vulcu, and the Libyan government occurred in the Eastern District of New York. Speiser, not Giacobbe, engaged in discovery and negotiated a settlement in the case. Fifth, Speiser's business decisions allegedly causing the breach of contract occurred in New York, and Speiser merely communicated its decision to Giacobbe via telephone.

Even if Giacobbe were to rely on the fact that he performed contractual obligations in Illinois, such argument would not carry the day. "[P]erformance of contractual obligations by the plaintiff, not the defendant, in the forum state .... is not sufficient, by itself, to confer jurisdiction over an out-of-state defendant, at least when the contract does not require the plaintiff to perform in the forum state." *Lakeside Bridge & Steel Co. v. Mountain State Constr.*

*Co.*, 597 F.2d 596, 601 (7th Cir. 1979). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). Nothing in the contract between Giacobbe and Speiser could be construed as requiring Giacobbe to perform his obligations in Illinois. Vulcu's claims were being litigated in New York and Vulcu was a resident of Ohio, so it was of no consequence to Speiser where Giacobbe performed what little was required of him under the contract.

Two of the cases upon which Giacobbe relies, *Hyatt International Corp. v. Coco*, 302 F.3d at 716, and *Daniel J. Hartwig & Associates, Inc. v. Kanner*, 913 F.2d 1213, 1219 (7th Cir. 1990), are easily distinguishable from the case at hand. In both of those cases, the nonresident defendant initiated a relationship with the resident plaintiff, and thus the courts held that the nonresident could reasonably foresee being haled into court in the forum state. *Hyatt Int'l Corp.*, 302 F.3d at 717; *Daniel J. Hartwig*, 913 F.2d 1218. In contrast, in the instant case, resident plaintiff Giacobbe initiated the relationship with nonresident defendant Speiser, and as such, Speiser could not reasonably foresee having to litigate in Illinois.

Further, Giacobbe's reliance on *GMAC Real Estate, LLC v. Canyonside Realty, Inc.*, 2005 WL 1463498, at *4 (N.D. Ill. June 15, 2005), in which a resident plaintiff sued nonresident defendants for breach of a franchise agreement, is unpersuasive. In that case, the court held that because the resident plaintiff provided substantial evidence of an ongoing business relationship with the nonresident defendants which required them to perform their obligations under the contract by repeatedly submitting financial reports for auditing by GMAC, advertising summaries, and requests for financial reimbursements to the resident plaintiff in Illinois, the

nonresident defendant had purposefully availed itself of the privilege of doing business in Illinois. *Id.* at *1.

In contrast to the facts in *GMAC*, Speiser sent infrequent correspondence to Giacobbe that merely updated him on the status of the litigation in New York and sent him a single payment of his share of the attorneys' fees from the Pan Am settlement. Unlike the ongoing franchisee-franchiser relationship that existed in *GMAC*, the instances in which Speiser interacted with Giacobbe were sporadic at best.

Consequently, the Court holds that Speiser has not purposefully availed itself of the privilege of conducting business in Illinois, and accordingly, the Court cannot properly exercise personal jurisdiction over Speiser.

## CONCLUSION

For the foregoing reasons, the Court grants Speiser's motion to dismiss for lack of personal jurisdiction [doc. no. 11-1] and denies the motion to transfer as moot [doc. no. 11-2]. This case is hereby terminated.

**SO ORDERED**  **ENTERED:**

8/23/06

HON. RONALD A. GUZMAN
United States Judge